UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BARBARA L. CRISP SUMNER,<br><br>    Plaintiff,<br><br>    v.<br><br>GARY MCCOMB, RIVER CITY CONSTRUCTION and STEWART CHILDRESS,<br><br>    Defendants. | Case No. 09-cv-316-JPG |

### MEMORANDUM AND ORDER

This matter comes before the Court on the motion for summary judgment filed by defendant River City Construction ("River City") (Docs. 30 & 31). Plaintiff Barbara L. Crisp Sumner filed a *pro se* response to the motion (Doc. 33), but the Court allowed her to file a substitute response after counsel entered her appearance (Docs. 41 & 42). River City has replied to that substituted response (Doc. 45).

**I.**  **Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). The standard is applied with special scrutiny in cases, such as discrimination cases, that often turn on issues of intent and credibility. *Michas v. Health Cost*

*Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas*, 209 F.3d at 692. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

**II.     Facts**

Viewed in Sumner's favor, the evidence in this case establishes the following relevant facts.[1]

In 2006, Sumner, a female, was a member of a union, Laborers Local 773, that had a collective bargaining agreement with River City. When River City needed workers for a job, it

---

[1] In discerning the relevant facts of this case, the Court has not considered an unsworn statement by Sheila Gibbs. It is well-established that in ruling on a motion for summary judgment, the Court considers only evidence that would be admissible or usable at trial. *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). To be admissible, a statement must be authenticated and testimony must be sworn, for example, in an affidavit or in a deposition. If it is not, the Court must disregard it. *See Scott v. Edinburg*, 346 F.3d 752, 759 (7th Cir. 2003).

notified Local 773, who then selected the workers and sent them to the job site, at which time they became employees of River City for as long as River City needed them on the job. If River City did not wish to use a particular worker, it would refuse to employ that worker and would request that the Local 773 hiring hall send another. It also had the prerogative to request that certain workers be sent or not sent to the job or that workers of a certain demographic be sent to fulfill diversity requirements set out by contracting property owners. Local 773 essentially acted as River City's personnel department.

On or about March 3, 2006, Stewart Childress, general foreman of a project to demolish Morris Library on the Carbondale, Illinois, campus of Southern Illinois University, requested Sumner be assigned to the job. Childress, also a laborer, was the "key man" on the project and had worked solely for River City for seven years. As the general foreman, he directed and instructed the laborers in their job tasks, had the authority to request workers from and return workers to the hiring hall and assumed the duties of the site supervisor, Darrell McClerren, when he was unavailable. Childress asked for Sumner in response to River City's request for a black female laborer to perform demolition work. Childress assigned Sumner the job of removing the ballasts from florescent light fixtures and provided nearly all Sumner's work instructions during her employment. Sumner was not provided a packet of rules, regulations and other information (such as a sexual harassment policy) as she usually had been when commencing other jobs for other employers, and no sexual harassment policy was posted at the job site.

Sumner experienced a number of unpleasant incidents while she was working for River City. Shortly after she began working on the job, Sumner observed Childress, Gary McComb (a fellow laborer serving as union steward on the project) and Bobby Bower (a fellow laborer) pulling and plucking the breasts of Sheila Gibbs, a female laborer, in the elevator. After that

incident, Sumner refused to take the elevator at work and instead used the stairs.

Also around that time, while Sumner was walking down the stairs from the fifth floor to the lunch area, McComb placed a feminine pad colored to look as if it had been used in Sumner's lunch box. When Sumner opened her lunch box, those present, including McClerren, began to laugh. She threw away the maxi-pad.

Later, on March 15, 2006, Childress approached Sumner from behind while she was bent over on the floor working and placed a metal rod between her legs and raised it up to touch her crotch. Sumner immediately told Childress not to do that anymore. Sumner reported this incident to Chuck Aly, Local 773's business manager, who said he would talk to Childress. No one at Local 773 ever reported the complaint to River City management.

On another occasion, Sumner observed McClerren and Kenny Hamm, a River City supervisor and brother to River City Vice President Steve Hamm, holding Gibbs down while Childress tried to unfasten her pants. On a number of other occasions, in McClerren's presence, McComb, Kenny Hamm and/or Bower straddled a picnic table bench on either side of Gibbs and acted like they were having sex with her; each time Sumner responded by leaving the table and having lunch by herself in her car. Sumner also observed Childress and Bower sticking feminine pads on Gibbs' back and often heard McClerren, Kenny Hamm and Bower tell sexual jokes. Sumner responded by trying to stay away from her coworkers.[2]

Sumner never complained to River City management about any of these incidents because she believed that River City supervisors were responsible for the incidents (Sumner

---

[2] Sumner also presented evidence of a threat of violence if she placed a rubber snake on McClerren. There is nothing remotely suggesting this incident was related to Sumner's sex, so the Court does not find it relevant.

believed Childress was her supervisor since he called her to the job and gave her work orders).

River City's sexual harassment policy provides that the harassed employee should object to the unwelcome conduct and ask the offender to stop. It also requires that sexual harassment be reported promptly to the employee's immediate supervisor or River City's equal employment opportunity officer. River City never provided a copy of its sexual harassment policy to Sumner and did not post it at the worksite.

Neither Childress nor McComb were part of the River City management and technically, neither had the authority to "hire, fire or discipline" workers, although as general foreman, Childress had the authority to remove her from the job and send her back to the union hiring hall. As union steward, McComb functioned as a representative of Local 773 if any laborer had a problem or grievance about the job.

On March 24, 2006, the Morris Library construction project was shut down because of a complaint about possible asbestos dust, and the employees working there were laid off. At that time, most of the work removing ballast from florescent light fixtures had been completed. As a consequence, when the asbestos problem had been abated and the demolition work recommenced, River City Vice President Steve Hamm decided not to call Sumner back to work. He made this decision after consulting with McClerren. Sumner sought psychological counseling as a result of her experiences at River City.

In October 2006, Sumner filed a charge with the Illinois Department of Human Rights ("IDHR"). She exhausted her administrative remedies and filed this timely lawsuit on April 24, 2009. She alleges claims of sexual harassment, retaliation and discrimination on the basis of age, sex and race, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

River City filed this motion for summary judgment on Sumner's sexual harassment claim arguing (1) Sumner cannot prove she was subject to a hostile work environment and, alternatively, (2) if she can prove the environment was hostile, River City cannot be liable for it because the alleged harassers were not Sumner's supervisors and because River City did not know and could not have known about their alleged offensive conduct such that they should have taken remedial action.

As a preliminary matter, River City asks the Court to disregard all evidence of harassment except the lunch box and the metal rod incidents because she did not include the other incidents in her IDHR charge. It is true that Title VII requires a plaintiff to present her Title VII claims to the EEOC (or a cooperating state office like IDHR) before filing a federal lawsuit. 42 U.S.C. § 2000e-5(f)(1); *Gorence v. Eagle Food Ctrs, Inc.*, 242 F.3d 759, 763 (7th Cir. 2001). A Title VII plaintiff may sue only on "those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 689 (7th Cir. 2001) (internal quotations and citations omitted). Claims are "like or reasonably related" if there is a factual relationship between them, that is, the charge and the complaint "describe the same conduct and implicate the same individuals." *Id.* (internal citations and quotations omitted). If there is such a factual relationship, the Court then asks whether the lawsuit claim could reasonably have developed from the EEOC's investigation of the charge. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). If so, the employer will have had fair warning of the claims against it and a fair chance to settle the dispute during the administrative proceedings. *Haugerud*, 259 F.3d at 689.

Here, the incidents Sumner did not include in her charge are like or reasonably related to

the incidents described in her charge and/or investigated by the IDHR. Unlike the situation in *Conner v. Illinois Department of Natural Resources*, 413 F.3d 675, 680 (7th Cir. 2005), where the Court refused to consider a failure to promote that post-dated the charge so could not conceivably have been included in it, here all of the alleged offensive incidents contribute to the same offensive work environment as the incidents considered by the IDHR and involve the same general group of alleged harassers in the same short period of time. Thus, this lawsuit could reasonably have developed from the IDHR's investigation of Sumner's charge and, indeed, documents Sumner submitted from the IDHR proceedings indicate that the issue of harassment of Gibbs did arise in those proceedings. Thus, River City had fair warning of Sumner's sexual harassment charge and a fair opportunity to investigate and settle it. The Court will therefore consider all the incidents about which Sumner testified in this lawsuit.

**III.     Analysis**

Title VII prohibits employment discrimination on the basis of sex: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . gender . . . ." 42 U.S.C. § 2000e-2(a)(1). This sex discrimination prohibition includes the prohibition of sexual harassment that creates a hostile work environment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

To establish a prima facie case of sexual harassment under Title VII, a plaintiff must show that (1) she was subjected to unwelcome harassment, (2) the harassment was because of her sex, and (3) the harassment was sufficiently severe or pervasive to alter the condition of employment and create a hostile or abusive atmosphere. *Lucero v. Nettle Creek Sch. Corp.*, 566

F.3d 720, 731 (7th Cir. 2009) (citing *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007)).

In Title VII cases where the harasser was the plaintiff's supervisor, the employer is generally vicariously liable for an actionable hostile environment created by a supervisor with authority over the victimized employee. *Faragher v. Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). However, if the employer did not take any tangible employment action against the employee, the employer may raise an affirmative defense to liability or damages. *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. To succeed in its affirmative defense, the employer must show that (1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by her employer or to avoid harm otherwise. *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765.

If, on the other hand, the actionable hostile work environment was created by a coworker as opposed to a supervisor, a plaintiff must show that the employer was negligent in discovering or remedying the harassment. *Loughman v. Malnati Org., Inc.*, 395 F.3d 404, 407 (7th Cir. 2005); *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). An employer can escape liability by showing that its response to the possibility of harassment was timely and reasonably likely to prevent the harassment. *Lucero*, 566 F.3d at 731; *Parkins*, 163 F.3d at 1032.

River City argues that Sumner cannot prove the third element of her case – that the harassment was sufficiently severe or pervasive to alter the condition of employment and create a hostile or abusive atmosphere. River City also argues that Sumner cannot establish a basis for

employer liability for River City employees' actions.

### A. Hostile Environment

A hostile work environment is created by conduct that has "the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). Sexual harassment that creates a hostile work environment is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" *Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998) (quoting *Meritor*, 477 U.S. at 67) (further internal quotations omitted); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998). "[H]arassing conduct does not need to be both severe and pervasive. One instance of conduct that is sufficiently severe may be enough." *Jackson v. County of Racine*, 474 F.3d 493, 499 (7th Cir. 2007) (internal citations omitted). Additionally, "[t]he employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Cooke v. Stefani Mgmt. Servs.*, 250 F.3d 564, 566-67 (7th Cir. 2001) (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 21-22 (1993)).

What is sufficient to constitute an objectively hostile working environment is not an easy task. It must be judged by "'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher*, 524 U.S. at 787-788 (quoting *Harris*, 510 U.S. at 23) (further internal quotations omitted); *accord Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)

will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (internal quotations and citations omitted).

When determining whether an environment is objectively hostile, the Court must examine the totality of the circumstances and "should not carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive." *Mason v. Southern Ill. Univ. at Carbondale*, 233 F.3d 1036, 1045 (7th Cir. 2000). Generally, inappropriate physical touching is considered more severe than mere verbal behavior, and the severity will depend, of course, on the nature of the touching. *See Turner v. The Saloon, Ltd.*, 595 F.3d 679, 685-86 (7th Cir. 2010); *but see Boumehdi*, 489 F.3d at 789 ("A jury reasonably could conclude [that] at least eighteen sexist or sexual comments in less than a year's time and . . . similar comments . . . made 'very often,' . . . was pervasive enough to create a hostile work environment."). Generally, stray remarks and the random use of an offensive epithet do not by themselves create hostile work environment. *Faragher*, 524 U.S. at 788; *Harris*, 510 U.S. at 21. In addition, harassing conduct or statements directed at someone other than the plaintiff do not have as great an impact on the working environment for the plaintiff as conduct or statements directed to her. *Ezell v. Potter*, 400 F.3d 1041, 1048 (7th Cir. 2005). The fundamental question is whether the offensive behavior made the workplace hostile for women as opposed to any other group of people. *See Yuknis v. First Student, Inc.*, 481 F.3d 552, 554 (7th Cir. 2007).

In this case, in a span of three weeks, Sumner was present in an elevator when Childress, Bower and McComb pulled and plucked Gibbs' breasts, observed McClerren, Kenny Hamm and Childress assault Gibbs and attempt to disrobe her, observed McComb, Kenny Hamm and Bower surround Gibbs on a picnic bench and make sexual motions towards her, and observed

Childress and Bower sticking feminine pads on Gibbs back. Also within that three-week period, McComb placed a used-looking feminine pad in Sumner's lunch box and Childress touched Sumner's crotch with a metal rod. Throughout the three weeks, Sumner also heard McClerren, Kenny Hamm and Bower often tell sexual jokes.

Clearly a jury could believe Sumner found her working environment subjectively offensive. She attempted to get away from the offensive conduct by avoiding the elevator and taking only the stairs, eating lunch by herself in her car, and avoiding contact with her coworkers. As for the metal rod incident, she told Childress to stop and complained to the person she thought would be able to change Childress' behavior. A reasonable jury could easily draw the conclusion that Sumner found her work environment hostile.

A jury could also find Sumner's work environment was objectively hostile. While it is true that a number of the incidents were directed at Gibbs and not Sumner herself, they were serious instances of touching Gibbs, even going so far as a forcible attempt to disrobe her. A reasonable jury could find the assault on Gibbs created a threat to a reasonable woman in Sumner's position because it demonstrated that the job superintendent, another supervisor and the foreman were willing to behave violently toward women who did not accede to their sexual demands. Furthermore, there was an instance of touching Sumner herself in her private areas and a rude joke directed at her involving the feminine pad in her lunch box. All this was overlaid by the frequent telling of sexual jokes and ultimately caused Sumner to seek psychological counseling. In addition, the instances were fairly frequent and concentrated in time, all occurring within only three weeks. A reasonable jury could find, viewing the totality of the circumstances, that the offensive conduct was severe or pervasive enough to create an objectively hostile working environment and to change the working conditions for women,

including Sumner, and not for men.

For these reasons, River City is not entitled to summary judgment because of the lack of a hostile working environment.

  B.   <u>Employer Liability</u>

If Sumner's hostile environment was caused by her supervisors, River City would be vicariously liable unless it could establish the *Faragher/Ellerth* affirmative defense. If, on the other hand, her hostile environment was caused by mere coworkers, River City will only be liable if it was negligent in discovering or remedying the harassment. River City argues that neither Childress nor McComb were Sumner's supervisors because they could not hire, fire or discipline her on behalf of River City. Sumner argues that Childress was her supervisor and that, in addition to Childress and McComb, supervisors McClerren and Kenny Hamm participated in and/or had knowledge of a number of the instances that contributed to Sumner's hostile working environment.

For Title VII purposes, a supervisor is someone with the power to directly affect the terms and conditions of the plaintiff's employment, not just an employee with some kind of managerial authority. *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 506 (7th Cir. 2004); *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002). Supervisory authority "primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee," and in the absence of at least some of this authority, an employee is not a supervisor for Title VII purposes. *Hall*, 276 F.3d at 355 (citing *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1034 (7th Cir. 1998)). It does not include "an employee merely having authority to oversee aspects of another employee's job performance." *Rhodes*, 359 F.3d at 506. For example, in *Hall* a harasser was found not to be an employee's supervisor where he directed her work operations,

had input into her performance evaluations and trained her. *Hall*, 276 F.3d at 355. On the other hand, a harasser was found to be a supervisor for Title VII purposes where he did not have the authority to make hiring, firing, promotion or disciplinary decisions about the victim but occasionally acted as her commanding officer and had the ability to initiate disciplinary proceedings against her. *See Gawley v. Indiana Univ.*, 276 F.3d 301, 310-11 (7th Cir. 2001).

No reasonable factfinder could find McComb was Sumner's supervisor. There is simply nothing in the record to establish that he had any power to directly affect the terms and conditions of Sumner's employment.

There is sufficient evidence, however, for a reasonable factfinder to find McClerren, Kenny Hamm and Childress were Sumner's supervisors. McClerren was the job superintendent in charge of Sumner's work and contributed to Steve Hamm's decision about whether to call her back to work after the asbestos abatement was completed. Sumner has testified that Kenny Hamm was her supervisor, and River City has not presented any evidence otherwise. Finally, Childress had the ability to hire Sumner, as demonstrated by the fact that he requested her from the Local 773 hiring hall, and he had the ability to send her back, effectively terminating her employment. The fact that he did not technically have the power to "hire" or "fire" her does not negate his real power over whether she was employed by River City.

Childress points to *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027 (7th Cir. 1998), in support of his argument that construction foremen are not supervisors for Title VII purposes. *Parkins* found that the two particular foremen in that case were not supervisors, but those foreman had far less power over the plaintiff in that case than Childress did in this case. *See id.* at 1034-35. In *Parkins*, the foremen had never substituted for a superintendent. *Id.* They had worked in other positions in addition to foreman and did not work year-round. *Id.* The

foremen did not decide what work to do or how many employees would be assigned to their crews and could not request that the plaintiff work at their site. *Id.* The plaintiff in that case did not work exclusively with either of them, and did not even work in the task areas they supervised. *Id.* The foremen gave the plaintiff minimal direction about where to dump or pick up a load in her truck. *Id.* They, in turn, answered to a superintendent who made the significant decisions about the job and evaluated employees. *Id.* In contrast, in this case, Childress had worked solely for River City as a foreman for seven years, had the power to effectively employ Sumner by calling her from the Local 773 hiring hall and to effectively discharge her by sending her back, on occasion functioned as a stand-in for McClerren, and directed Sumner's work every day. This would be sufficient for a reasonable factfinder to find Childress was a supervisor, even considering *Parkins*.

### 1. Liability for Supervisor-Created Hostile Environment

As noted earlier, an employer will not be liable for a hostile environment created by a supervisor if it did not take a tangible employment action and if it can establish (1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by her employer or to avoid harm otherwise. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

There is a genuine issue of fact about whether River City exercised reasonable care to prevent sexually harassing behavior. Having a sexual harassment policy is not enough, by itself, to establish the first element of the *Faragher/Ellerth* defense. *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 953 (7th Cir. 2005). The promulgation and use of a policy can, however, show that an employer took reasonable care to prevent sexual harassment. *Id.*; *Shaw v. AutoZone, Inc.*, 180

F.3d 806, 812 (7th Cir. 1999).

In this case, although River City had a sexual harassment policy, its efforts to educate its employees about the policy and ensure their compliance with it were lacking. Indeed, Sumner was not notified of the policy when she began working for River City, and it was not posted at the worksite. This is sufficient evidence from which a reasonable jury could find that River City's efforts to prevent sexual harassment fell short of reasonable. Furthermore, Sumner's failure to take advantage of a policy about which she was never informed is not unreasonable. River City is therefore not entitled to summary judgment by reason of the *Faragher/Ellerth* defense.

### 2. Liability for Coworker-Created Hostile Environment

Even if the Court had found the hostile environment was created by mere coworkers, there is sufficient evidence that River City was negligent in remedying the hostile environment. Here, McClerren, the superintendent and a member of River City's management, was clearly aware of events substantially contributing to the hostile environment because he either participated in them (e.g., by holding Gibbs down while Childress tried to disrobe her and by telling sexual jokes) or by observing them (e.g., by observing the picnic table incidents), yet he did not report them up the chain of command or do anything else to remedy them. The same is true for Kenny Hamm, another member of River City's management. The failure of River City to remedy harassment of which its management was aware is sufficient to establish a basis for employer liability for coworker sexual harassment.

For these reasons, River City is not entitled to summary judgment on this basis.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** River City's motion for summary

judgment (Doc. 30).

One further note is in order. At the beginning of this case, the Court noted that Sumner has attempted to plead causes of action for sexual harassment, retaliation for complaining of sexual harassment and age, sex and race discrimination for her failing to be recalled to work after a layoff (Doc. 3). Since then, the parties have focused on the alleged sexual harassment claim in their filings to the Court. The Court strongly encourages the plaintiff to eliminate any causes of action that she no longer wishes to pursue either by amending her complaint (if leave is granted) or by omission of those claims in the final pretrial order.

**IT IS SO ORDERED.**
**DATED:  November 4, 2010**

                                                s/ J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **DISTRICT JUDGE**